15048

JACK ULMER, INC., v. DANIEL, ATTORNEY GENERAL, *ET AL.*

(7 S. E. (2d), 829)

The order of Judge Gaston follows:

This action was instituted by the plaintiff for the purpose of preventing the South Carolina Unemployment Compensation Commission from collecting contributions from the plaintiff in the sum of four hundred sixteen and 85/100 ($416.85) dollars, which had been assessed against the plaintiff for January through December of 1937 and January through June of 1938. The plaintiff alleged that the said Compensation Commission had issued an execution to the South Carolina Tax Commission, and that unless the defendant was restrained, said Tax Commission would levy such execution against the plaintiff for said sum. The plaintiff further alleged that it did not have an adequate remedy at law. At the time of the service of the summons and complaint a temporary restraining order against the said Compensation Commission was issued by the Honorable G. Duncan Bellinger.

The defendant South Carolina Unemployment Compensation Commission claimed first in its answer that the plaintiff, Jack Ulmer, Inc., and another corporation called the Atlas Company were owned by the same parties and that the two corporations should be treated as a single unit, and that if so treated as a single unit, they would have more than eight employees, and would, therefore, be within the coverage provision and liable for contributions.

The defendant Compensation Commission further contended that by Section 19(e) whenever an employing unit made a contract for work which was part of its usual trade or occupation, that such employing unit was deemed to have in its employ all employees of the contractor, and was, therefore, liable for contributions, and that the plaintiff did make such contracts.

The case came on to be heard before me on February 20, 1939, and the plaintiff introduced testimony by an officer of the corporation to the effect that Jack Ulmer, Inc., had only seven employees during the period of time in question, and included in this number were J. M. Ulmer and Mrs. Bessie B. Ulmer, the principal owners of the corporation. The testimony further disclosed that the said J. M. Ulmer and Mrs. Bessie B. Ulmer owned another corporation known as the Atlas Company, and that they were the only two employees of the Atlas Company, but that the two corporations were owned by the same interests and did business at the same place in the City of Columbia, South Carolina. It was further testified that during the years in question the Atlas Company (not the plaintiff in this cause) was engaged in the business of the building of a number of houses in the City of Columbia, either for its own use or for sale, and thereby entered into contracts with certain contractors for the erection of said houses. It was admitted at the trial of the case that all of the contractors with whom the Atlas Company did business had paid their contributions to the South Carolina Unemployment Compensation fund. Mr. Ulmer testified that the Atlas Company was organized as a holding company but gradually got into the business of building houses on account of the then pressing need for new houses in Columbia. It was undisputed that all of such contracts for the erection of houses were made by Atlas Company and not by Jack Ulmer, Inc.

The first question to be determined in the case, from the evidence and the pleadings, is whether or not the two corporations taken together would have

eight or more employees, and if said corporations did have more than eight employees, whether the plaintiff would be liable for the contributions to the unemployment compensation fund.

. Section 19, Subsection (f)(4) provides: "Any employing unit which together with one or more other employing units, is owned or controlled (by legally enforcible means or otherwise) directly or indirectly by the same interests, or which owns or controls one or more other employing units (by legally enforcible means or otherwise), and which, if treated as a single unit with such other employing unit, would be an employer under Paragraph 1 of this subsection."

It will be seen from this section that two or more companies owned by the same interests are to be treated as a single unit, and if the two units so combined have eight or more employees, they are taxable.

Section 19, Subsection (f)(1), provides as follows: "Any employing unit which in each of twenty different weeks within either the current or the preceding calendar year (whether or not such weeks are or were consecutive) has or had in employment, eight or more individuals (not necessarily simultaneously and irrespective of whether the same individuals are or were employed in each such week)."

It will be noted that the contributions from any employing unit are based upon *eight or more individual employees.* The Act used the word "individuals," meaning to my mind eight or more different persons. The dictionary defines "individual" when used as a noun as follows: "Anything that cannot be divided or separated into parts without losing its identity; that which has definite and continuous existence; a person, animal or thing; especially a human being; person."

It is clearly admitted in this case that if the two corporations so combined have eight or more employees, it would be necessary to use the same employees twice, to wit: J. M. Ulmer and Mrs. Bessie B. Ul-

mer, as they work both for Jack Ulmer, Inc., and for the Atlas Company, and I cannot sustain the contention of the defendant in this respect.

The Unemployment Compensation Commission contends that even though the two corporations taken together do not have sufficient number of individuals so as to require contributions to the unemployment compensation fund, the pay rolls of such employees are still taxable by reason of the fact that during the period of time that this case involves one or more of said corporations entered into contracts with contractors for the building of houses, and that the employees of such contractors thereby became the employees of the corporations, which would require contributions from the employees of the corporation even though the contractors had already paid to the commission their contributions for all of their employees.

Section 19, Subsection (e), provides as follows: " 'Employing Unit' means any individual or type of organization, including any partnership, association, trust, estate, joint stock insurance company or corporation, whether domestic or foreign, or the receiver, trustee in bankruptcy, trustee or successor thereof, or the legal representative of a deceased person, which has or subsequent of January 1, 1935, had in its employ one or more individuals performing services for it within this state. All individuals performing services within this state for any employing unit which maintains two or more separate establishments within this state shall be deemed to be employed by a single employing unit for all the purposes of this act. Whenever any employing unit contracts with or has under it any contractor or sub-contractor for any employment which is part of its usual trade, occupation, profession or business, unless the employing unit as well as each such contractor or sub-contractor is an employer by reason of Section 19(f) or Section 8(c) of this act, the employing unit shall for all the purposes of this act be deemed to employ each individual in the employ of each such contractor or sub-contractor for each day dur-

ing which such individual is engaged solely in performing such employment; except that each contractor or sub-contractor who is an employer by reason of section 19(f) or section 8(c) of this act shall alone be liable for the contributions measured by wages payable to individuals in his employ, and except that any employing unit who shall become liable for any pay contributions with respect to individuals in the employ of any such contractor or sub-contractor or who is not an employer by reason of section 19(f) or section 8(c) of this act, may recover the same from such contractor or sub-contractor."

Before discussing the meaning of "employing unit" as defined by Section 19, the Act provides by Section 7(a)(1): "On and after July 1, 1936, contributions shall accrue and become payable by each *employer* for each calendar year * * *. Such contributions shall become due and be paid to the commission at such times and in such manner as the commission may prescribe, and shall not be deducted, in whole or in part, from the wages of individuals in his employ."

Section 7, Subsection (b), provides: "Rate of Contribution: Each *employer* shall pay contributions equal to the following percentages of wages payable by him with respect to employment."

It will be noted that an "employing unit" is one who employs one or more persons, but an "employing unit" is not liable for contributions. The Act does provide, Subsection (e) *supra,* that the employees of a contractor or subcontractor which are a part of the usual occupation or trade of the employing unit shall be deemed to be employees of the employing unit. The purpose of this section seems to be to prevent loopholes in the enforcement of the law. The evidence indicated that for the period of time involved in this case the Atlas Company was largely engaged in the building of houses, and that such business would probably be in its usual trade or occupation for that period of time.

As stated, an employing unit is not liable for contributions, but only employers are liable, and an employer is one who employs eight or more persons.

Now, it seems to the Court that if the contention of the defendant should prevail, the intent of the law would be defeated for the reason that any individual engaged, say, in the real estate business, with only one employee, who lets contracts for the building of houses by contractors who regularly and properly pay their contributions for their employees, would have to pay a contribution for its one employee, when other businesses having only one employee would not be liable.

The defendant further contends that not only is the Atlas Company, who made the contracts for the building of houses, liable for the contributions for its employees, numbering two, but that Jack Ulmer, Inc., who has seven employees, is also liable because these two units can be considered as one under Section 19, Subsection (f) (4). The answer to that is that such units are only taken together for the purpose of taxing the units, if treated as one, and this section has no relation whatsoever to Subsection (e) under Section 19, whereby an employing unit is defined.

The Act is a taxing law and should be strictly construed, and the Court does not think that anyone who is liable for contributions should escape liability, but neither does the Court think that the meaning and interpretation of the Act should be stretched so as to include people not specifically included therein.

In addition to the foregoing views it will be seen by reference to the terms of the Act known as the Unemployment Compensation Act of 1936, Volume 39, Statutes at Large, page 1716 *et seq.,* approved 6th June, 1936, that Section 19 relates to definition of terms as used in the Act. Section 19 f(4) defines employer to mean any employing unit which, together with one or more other such units, is owned by the same interests or which owns or controls one or more such

units, *and* which *if treated as a single unit,* etc., would be an employer (italics added), under Paragraph 1 of this subsection.

But I think, and so hold, that neither the Ulmer Company, Inc., nor the Atlas Company separately, nor if treated as a single unit, is an employer as defined in Section 19(f)(1), because only seven persons are employed by both companies if treated as a single unit. In other words Section 19(f)(1) relates only to any employing unit which has in employment eight or more individuals. The Act requires separate corporations, as employing units, to be treated as a single unit only for the sole purpose of ascertaining the total number of individuals employed by them under the terms of the Act, and has no reference to subcontractors. Looking, therefore, to Section 19(e) it is seen that whenever any employing unit contracts with any contractor for any employment which is a part of its usual trade, etc., the employing unit becomes liable under the Act for the contributions required, including its own employees.

Under the testimony only the Atlas Company contracts with or has under it any contractor or subcontractor for any employment which is part of its usual trade or business and, therefore, only the Atlas Company is liable for the contributions required. I reach this conclusion more readily because the Act is a new one on the books and is open to study and construction before it can be fully understood or applied. In reaching a correct judicial construction and interpretation of the Act the taxpayer should have the benefit of the doubt solved in his favor and against the State. *Hadden et al. v. South Carolina Tax Commission,* 183 S. C., 38, 190 S. E., 249.

Also, there are strong reasons for so construing the Act. Why should the employees of a unit which sells real estate participate in the unemployment compensation benefit in this case where only seven people work and two of them are owners of the company when the Act does not confer such benefits on seven persons when employed solely by,

say, a saw mill unit? Yet the lumber from a saw mill unit of seven persons might be sold to one contractor who builds a hundred houses and employs fifty men. The law does not seek to confer benefits upon one set of seven people and deny benefits to another set of seven individuals who perform harder labor and more menial tasks. The law does of course seek to include as employers all who come within its terms in a fairminded way. In this case there is no claim or charge that the Ulmer Company, Inc., is attempting to evade or even to avoid the statute by a subterfuge or fraud. In fact the evidence leads to the conclusion that this company was in business long before the Act was passed, and has always sought to comply with this law by requiring subcontractors to pay the contributions before engaging them to build houses. The plaintiff has an established lawful business, and gives jobs to five people, and also Mr. Ulmer and wife are on the job. They do not even plan to avoid the law, as they might with impunity do under the criterion of the recent case of *Darlington Theatres, Inc., v. Coker, Sheriff,* 190 S. C., 282, 2 S. E. (2d), 782, opinion filed May 10, 1939.

The defendants in this case contend to the contrary, and counsel for defendants had ably and adroitly presented by argument his views on the subject. However, in order to make the plaintiff liable under Section 19(f)(4) on the ground that two units are linked together by common ownership or control, it is necessary to count twice the same individuals, to wit, Mr. Ulmer and wife, and then if so treated as one unit, to hold that eight or more individuals are employed by the two affiliated companies, if treated as one unit. It seems to me that this conclusion would be contrary to the actual fact that only seven individuals are employed and it is unreasonable to count two of these twice.

But the defendants go further and say that even if only seven individuals are employed by both units, if treated as one, because owned by the same interest, which is not disputed, yet if either one of the two units contracts with any

contractor for "any employment which is a part of its usual trade  *  *  *  or business," then both Jack Ulmer, Inc., and Atlas Company are liable because both of these units are owned by the same interests. It seems to me that the defendants seek to apply twice the rule that "if treated as a single unit" the plaintiffs become liable, for "if treated as a single unit," they are not liable for more than seven people in their joint employ, still "if treated as a single unit," they both become liable for any employment of a subcontractor by only one of these two affiliated units. It would be necessary to read twice into the Act the words "if treated as a single unit" to arrive at the result claimed by the defendants. I see no good reason to interpolate the words "if treated as a single unit," in Section 19(e) when not put there by the terms of the Act.

From the foregoing I conclude that the plaintiff in this action is not liable for contributions to the South Carolina Unemployment Compensation fund, and that a permanent injunction should be issued restraining such collection, and it is so ordered.

*Messrs. John M. Daniel, Attorney General, Claude K. Wingate* and *Henry R. Sims,* for appellants,

*Messrs. Edens & Weinberg,* for respondent,

March 28, 1940.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BONHAM.

The facts in this case are not in dispute and are succinctly and clearly stated by Judge Gaston in his order on Circuit, from which this appeal comes. His exposition of the statute, and conclusions of law therefrom, meet the approval of this Court and are adopted by it. Let it be reported.

The judgment of the Court below is affirmed.

MESSRS. JUSTICES CARTER and FISHBURNE and MESSRS. ACTING ASSOCIATE JUSTICES J. HENRY JOHNSON and E. H. HENDERSON concur.