ABRAHAM FELDMAN *v.* ADMINISTRATOR, UNEMPLOY-
MENT COMPENSATION ACT

FELDMAN LOCKER PLANT, INC. *v.* ADMINISTRATOR,
UNEMPLOYMENT COMPENSATION ACT

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, Js.

Argued April 3—decided May 6, 1952

*Belton A. Copp,* for the appellants (plaintiffs).

*Harry Silverstone,* assistant attorney general, with whom, on the brief, was *George C. Conway,* attorney general, for the appellee (defendant).

BROWN, C. J. The appeal in each of these cases from the assessment of contributions against the plaintiff under the Unemployment Compensation Act was dismissed by the Superior Court. The plaintiffs have filed a consolidated appeal from the judgments. Both actions were submitted to the Superior Court on identical stipulations of fact and the decision in both turned on the identical question of law.

Since January 1, 1948, the plaintiff Abraham Feldman, as sole proprietor, has owned and operated in Norwich a grocery and locker plant business known as Feldman's Store and Locker Plant. He has personally managed this business and employed one person to help him. Since the above date the plaintiff Feldman Locker Plant, Inc., a Connecticut corporation, has owned and operated a locker plant in New London. The corporation is owned and controlled, within the meaning of § 1325b of the 1951 Cumulative Supplement to the General Statutes, by the plaintiff Abraham Feldman. He is its president and treasurer and one of its directors. From and after January 1, 1948, the corporation employed Abraham Feldman, Hyman Feldman, vice-president and general manager, and Maxwell Schwatlow, a butcher.

Section 1325b provides in part as follows: "(4) [A]n employer who has four or more employees in his employment at the same time during any thirteen weeks in any calendar year after 1941 shall become subject to this chapter at the end of the thirteenth of such weeks. In determining whether an employer in question shall

be considered, for the purposes of this section, as having had a particular number of employees in his employment at a given time, there shall be counted, in addition to his own employees, if any, (a) the employees of each employer whose business was at the given time owned or controlled, directly or indirectly, by the same interests which owned or controlled the business of the employer in question. . . ." Since Feldman had one employee and the corporation had three employees, of whom Feldman was one, the precise question is whether, within the terms of the provision quoted, each plaintiff shall be held to have had four employees on January 1, 1948, and for thirteen weeks thereafter, thereby becoming liable to assessment under the Unemployment Compensation Act.

While the plaintiffs do not question that, by reason of the provision quoted, the statute is effective to warrant disregarding the corporate veil in determining the number of employees of each plaintiff, they contend that the statute must mean that, the veil having been lifted, existence of the corporate entity cannot be asserted to afford a basis for counting Feldman as an employee of the corporation. In short, in the words of their brief, their claim is that to construe the statute as warranting the conclusion that the corporation had three instead of two employees, thus bringing both the Norwich and the New London units within the act, "violates the spirit of this Act, which the legislature intended to cover only those employers, employing units, or interests which had four or more employees for the requisite period of time." They therefore urge that Feldman, as the "same interest" and "the employer" within the meaning of § 1325b (4) (a), did not have four or more persons in his employ during the period in question. This language is relied upon as authority: "[W]e are not required to give the

words of the statute their literal meaning. 'The search is for the intent of the lawmakers and when it is clearly ascertainable it prevails over the literal sense and the precise letter of the statute.' . . . 'The letter of a law is not in all cases a correct guide to the true sense of the lawmaker. Statutes general in their terms are frequently construed to admit implied exceptions.' . . . 'A thing within the letter of a statute may be unaffected by its provisions, if not within the intention of the makers, and if what was this intention sufficiently appears from the terms which they used, in connection with the conditions calling for such legislation.'" *New Haven Savings Bank* v. *Warner,* 128 Conn. 662, 668, 25 A. 2d 50.

In construing a legislative act we must not only consider it in the light of its history, its language, the purpose it is designed to serve and the circumstances surrounding its enactment but, in determining its purpose and scope, make every part operative and harmonious with every other part in so far as is possible. *Savings Bank of Rockville* v. *Wilcox,* 117 Conn. 188, 193, 167 A. 709. As we have heretofore repeatedly pointed out, after according due consideration to its history and the circumstances of its enactment, the primary purpose of the Unemployment Compensation Act is to relieve against the distress of unemployment. *Waterbury Savings Bank* v. *Danaher,* 128 Conn. 78, 81, 20 A. 2d 455; *New Haven Metal & Heating Supply Co.* v. *Danaher,* 128 Conn. 213, 220, 21 A. 2d 383. We also explained in the *Waterbury Savings Bank* case at page 82 that the act provides for the creation, by employers' involuntary contributions, of a fund from which the benefits to employees are paid. The obvious purpose of § 1325b (4) (a) is to prevent an employer from avoiding payment of the involuntary contribution prescribed. *New Haven Metal & Heating Supply Co.* v.

*Danaher,* supra, 221. In other words, the reason for including this provision in the act was to insure contributions from all employers falling within the terms of the subsection. In the light of the primary purpose of the act to provide for employees who become victims of unemployment, it would be most unreasonable to interpret the provision in question as operative to exclude from the protection of the act the very employees of that employer whose contribution it is the purpose of the subsection to exact. Since the act is remedial, it must be liberally construed as regards beneficiaries in order to accomplish its purpose. *Grievance Committee* v. *Payne,* 128 Conn. 325, 331, 22 A. 2d 623. Further, since the claim of the plaintiffs in effect urges an exemption from this law of general application, which imposes a tax applying to employment generally, the rule requiring liberal construction in favor of the taxpayer is not applicable. *Waterbury Savings Bank* v. *Danaher,* supra, 83. One further principle to be noted is that in interpreting this statute of wide application it is the general field of its operation and effect which is to be regarded rather than its application to this somewhat exceptional case, for appropriateness to the general situation is the predominant consideration. *H. Duys & Co.* v. *Tone,* 125 Conn. 300, 311, 5 A. 2d 23. It is our conclusion that § 1325b (4) (a) requires that the plaintiff Feldman be counted as one of the employees of the plaintiff corporation.

It follows from this conclusion that, in the words of subsection (4), "for the purposes of this section," each of these plaintiffs is considered as having had four employees, and each therefore became a liable employer on April 1, 1948, the end of the thirteenth week. However, each plaintiff, though a liable employer, is only obligated to pay the contribution with respect to the wages paid to his own employees, and the assessments

in question are limited accordingly. General Statutes § 7497, as amended; Lotwin, Coverage of State Unemployment Compensation Laws, 3 Law & Contemp. Prob. 7, 11. The assertion in the plaintiffs' brief that the legislature could not have intended that one employee should be counted twice to bring an employer within the act can have no application in the case before us, for the plaintiff Feldman under the administrator's decision was counted but once, and that was as an employee of the corporation. The case of *Taylor-Graves, Inc.* v. *Unemployment Compensation Administrator,* 15 Conn. Sup. 399, cited by the plaintiffs, related solely to the effect of the act upon the liability of a successor corporation for assessment of contributions and is no authority for the construction claimed by them. Nor are *Milrose Co.* v. *Unemployment Compensation Commission,* 126 N. J. L. 441, 19 A. 2d 892, and *Jack Ulmer, Inc.* v. *Daniel,* 193 S. C. 193, 7 S. E. 2d 829. Not only did the context of the statutes construed differ in those cases but each involved the counting of a single employee twice.

There is no error.

In this opinion the other judges concurred.