## MARY STITZER *v.* RINALDI'S RESTAURANT ET AL.
### (6172)

BORDEN, DALY and NORCOTT, Js.

Argued May 10—decision released August 2, 1988

*Jason M. Dodge,* with whom, on the brief, was *Douglas L. Drayton,* for the appellants (defendants).

*Edward T. Dodd, Jr.,* for the appellee (plaintiff).

BORDEN, J. The defendants[1] appeal from a decision of the compensation review division granting an award to the plaintiff for surgical scars on her neck and hip pursuant to General Statutes § 31-308 (d).[2] The sole

---

[1] The named defendant is the plaintiff's employer. The defendant Continental National American Group is the employer's workers' compensation insurer.

[2] General Statutes § 31-308 (d) provides in relevant part: "In addition to compensation for total or partial incapacity or for a specific loss of a member or use of the function of a member of the body, the commissioner may award such compensation as he deems just . . . for any permanent significant disfigurement of, or permanent significant scar on, any part of the

issue on appeal is whether the compensation review division erred in concluding that the plaintiff's scars which resulted from spinal surgery are compensable. We find no error.

The facts relevant to this appeal are undisputed. On September 11, 1981, the plaintiff, while employed by the named defendant, sustained a compensable injury to her neck which was diagnosed as a cervical disc injury. On January 5, 1983, the plaintiff underwent an anterior C4-C5 discectomy and fusion. The fusion required that a piece of bone from her hip be removed and grafted on the indicated vertebral bodies. The cervical fusion surgery and bone graft left surgical scars on the claimant's hip and on the front portion of her neck.

The plaintiff sought an award under General Statutes § 31-308 (d) for both scars. The commissioner determined that neither scar was compensable. The compensation review division reversed that decision, concluding that the "spinal surgery" exclusion of § 31-308 (d) precludes compensation only for "scars resulting directly from an incision on the back" and that "[n]either of the scars here . . . derived from an incision on the back." This appeal followed.

The defendants argue that the decision of the review division is contrary to the clear language of General Statutes § 31-308 (d), which provides that "no compensation shall be awarded . . . for any scar resulting from . . . any spinal surgery." Claiming that this language is unambiguous, the respondents urge us to rely upon that well established principle of statutory inter-

---

body . . . but *no compensation shall be awarded* when such disfigurement was caused solely by the loss of or the loss of use of a member of the body for which compensation payments are provided by the terms of subsection (b) of this section or *for any scar resulting from an inguinal hernia operation or any spinal surgery."* (Emphasis added.)

pretation which requires "that statutory language is to be given its plain and ordinary meaning. . . . [I]f the language of the statute is clear, it is assumed that the words themselves express the intention of the legislature and there is no room for judicial construction of the statute." (Citations omitted.) *Mazur* v. *Blum,* 184 Conn. 116, 118–19, 441 A.2d 65 (1981). We do not agree.

" 'The objective of statutory construction is to give effect to the intended purpose of the legislature.' *State* v. *Delafose,* 185 Conn. 517, 521, 441 A.2d 158 (1981). Although it is axiomatic that, where the statutory language is clear and unambiguous, construction of the statute by reference to its history and purpose is unnecessary; *Manchester* v. *Manchester Police Union,* 3 Conn. App. 1, 6, 484 A.2d 455 (1984); that axiom only applies in full force '[w]here . . . the language of a statute is . . . *absolutely* clear' on its face and where no ambiguity is disclosed by reference to its background. (Emphasis in original.) *Anderson* v. *Ludgin,* 175 Conn. 545, 552–54, 400 A.2d 712 (1978). Where such absolute clarity is lacking and such an ambiguity is disclosed, the court must look to the language of the statute, its history, purpose, objective and underlying policy. Id. What appears to be clear statutory language should not be read to arrive at an 'ambiguous or unreasonable result' or to 'defeat a legislative intent which becomes evident when the statute is read in the light of its history and purpose.' *State* v. *Delafose,* supra, 522." *Shelby Mutual Ins. Co.* v. *Della Ghelfa,* 3 Conn. App. 432, 437–38, 489 A.2d 398 (1985), aff'd, 200 Conn. 630, 513 A.2d 52 (1986).

The background to the disfigurement provisions of General Statutes § 31-308 (d) discloses ambiguity in the "spinal surgery" exclusion. "The portion of the statute authorizing an award for disfigurement had its origin in the enactment of § 1328e of the 1939 Cumulative

Supplement, which amended § 5237 of the 1930 Revision of the General Statutes (providing compensation for partial incapacity) by authorizing an award 'for any serious and permanent disfigurement of the face, neck, head or hands.' In 1943, by the enactment of § 698g of the 1943 Supplement, the disfigurement provision was amended by adding 'forearms' after 'head.' With these amendments (and other amendments unrelated to the disfigurement provision), § 5237 was carried into the 1949 Revision of the General Statutes as § 7431. . . . [That provision] became § 31-162 of the 1958 Revision, but it was amended by § 7 of No. 580 of the 1959 Public Acts, which added after the word 'hands' the words 'upper arms and legs below the knees.' The sections of the entire compensation act were rearranged and renumbered in 1961 so that § 31-162, as amended in 1959 and, in a respect immaterial to this appeal, in 1961, [was] designated § 31-308." *Rivera* v. *I.S. Spencer's Sons, Inc.*, 154 Conn. 162, 165, 223 A.2d 808 (1966). Although the enumeration of specific body parts in the disfigurement compensation provision placed Connecticut's compensation law "[a]t the most restrictive end of the spectrum"; 2 Larson, Workmen's Compensation Law § 58.32, p. 10-344.140; "[i]t is obvious that the course of these various amendments was to increase the portions of the body embraced in the disfigurement provision and that this purpose was accomplished by the enumeration of additional specific portions of the body in line with the method followed in the drafting of the original disfigurement provision. . . . [T]he broadening of the disfigurement provision, by successive amendments, to include additional enumerated portions of the body has tended to follow the increasing exposure of modern dress. *Finoia* v. *Winchester Repeating Arms Co.*, 130 Conn. 381, 384, 34 A.2d 636 [1943]; *Dombrowski* v. *Fafnir Bearing Co.*, 148 Conn. 87, 92, 167 A.2d 458 [1961]." *Rivera* v. *I.S. Spencer's Sons, Inc.*, supra, 165–66.

Public Acts 1967, No. 67-842 amended General Statutes § 31-308 and replaced the enumeration of compensable body parts with an all-inclusive coverage of "scar[s] on, any part of the body" but excluded those "resulting from a hernia operation or any spinal surgery."[3] While the disfigurement coverage of § 31-308 was changed from a provision of enumerated inclusions to one of enumerated exclusions, nothing in the 1967 amendment or its legislative history indicates that the coverage of § 31-308 was intended to diminish. In fact, the legislative history reflects an intent to continue the trend of broadening the compensability for disfiguring scars. The only references to the "spinal surgery" exclusion in the legislative history accompanying the 1967 amendment to § 31-308 referred to this exclusion as covering "scars which are disfiguring . . . due to an operation on the back"; 12 H.R. Proc., Pt. 9, 1967 Sess., p. 4039, remarks of Representative Paul Pawlak, Sr.; and an "operation for a . . . back injury." 12 S. Proc., Pt. 5, 1967 Sess., p. 2259, remarks of Senator Anthony P. Miller. In 1975, Public Act 75-48 changed the "hernia operation" exclusion to "an inguinal hernia operation"[4] exclusion in order to permit recovery for scars resulting from chest hernias, thereby making the disfigurement provision consistent with the "previous practice" of allowing compensation for "visible scars." 18 H.R. Proc., Pt. 3, 1975 Sess., p. 1292, remarks of Representative Joseph S. Coatsworth.[5]

---

[3] Public Acts 1967, No. 67-842 also amended § 31-308 by, inter alia, deleting the requirement that the disfigurement be "serious."

[4] An "inguinal hernia" is a hernia, or a protrusion of an internal bodily organ outside the confines of its body cavity, which consists of a rupture in the inguinal canal, a passage in the region of the groin. 4A R. Gray & L. Gordy, Attorneys' Textbook of Medicine (3rd Ed.) Paras. 222.01, 222.11 (1), 222.11 (2), 222.30, 222.40. "The most common hernias are the abdominal hernias and of these the most common is known as the indirect inguinal hernia . . . ." Id., Para. 222.01, p. 222-4.

[5] Public Acts 1979, No. 79-376 inter alia, divided General Statutes § 31-308 into subsections, placing the disfigurement provision into subsec-

Thus, it appears from the history of § 31-308, as amended, that the "spinal surgery" and "inguinal hernia operation" exclusions were intended to be narrow provisions designed to add other parts of the body to the coverage of the statute and thus to continue, in a different form, the long established compensation exclusion for disfigurement of body parts which are not "ordinarily exposed." *Finoia* v. *Winchester Repeating Arms Co.,* supra, 384; see also *Dombrowski* v. *Fafnir Bearing Co.,* supra, 92 ("either frequently or usually exposed to view"). Nowhere in the statute itself or in the 1967 legislative comments on the "spinal surgery" amendment was there any mention of eliminating scars on the front of the neck, an "ordinarily exposed" part of the clothed body which had been included in our state's workers' compensation disfigurement provision since 1939.

Further ambiguity in the "spinal surgery" exclusion, as it applies to a scar on the front of the neck from spinal fusion surgery, is evident in light of changing medical practice. Anterior incisions on the neck for cervical disc surgery were not generally known in 1967. Only recently has the frontal approach been widely utilized. 1B R. Gray & L. Gordy, Attorneys' Textbook of Medicine (3rd Ed.) Para. 10A.75 (2), p. 10A-68. Thus, in 1967, when the legislature excluded "any scar resulting from . . . any spinal surgery," it did not contemplate that its exclusion would have any impact on a claimant seeking compensation for scarring on the front of her neck.

Reference to the background of § 31-308 (d), therefore, discloses that the "spinal surgery" exception requires judicial construction in order not to " 'defeat a legislative intent which becomes evident when the

---

tion (d). Public Act 79-376 also added the requirement that compensable permanent disfigurement or scarring be "significant."

statute is read in the light of its history and purpose.' "
*Shelby Mutual Ins. Co.* v. *Della Ghelfa,* supra, 438, quoting *State* v. *Delafose,* supra, 522. Given the statutory language, the legislative history, and the state of medical arts in 1967, we hold that, through enactment of the "spinal surgery" exclusion in General Statutes § 31-308 (d), the legislature intended to eliminate scarring benefits for scars resulting directly from an incision on the back in the course of spinal surgery, but did intend to continue to compensate employees for scars which are disfiguring or distracting from the personal appearance of the individual. Since neither of the scars involved here resulted directly from an incision on the back during spinal surgery, the review division properly concluded that the plaintiff should be compensated for the scars pursuant to General Statutes § 31-308 (d).

There is no error.

In this opinion the other judges concurred.